The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GINA BLOOM, an individual;
Plaintiff,

v.

STATE OF WASHINGTON, a State organized under the republic of the United States of America, SNOHOMISH COUNTY, a local governmental entity operating in the State of Washington, SNOHOMISH COUNTY SUPERIOR COURT, operating under the powers of the State of Washington, and the County of Snohomish, PAUL W. THOMPSON, in his official and individual capacity as Chief Presiding Judge of Family Court in Snohomish County, and JACALYN BRUDVIK, in her official and individual capacity, as a Commissioner for Snohomish County Superior Court, JENNIFER LANGBEHN, in her official and individual capacity as Judge in Snohomish County Superior Court. Defendants.

NO. 2:24-cv-2155

**ORDER GRANTING: (1) MOTION TO DISMISS BY SNOHOMISH COUNTY DEFENDANTS; and (2) MOTION TO DISMISS BY STATE OF WASHINGTON**

## I.    INTRODUCTION

This matter comes before the Court on two Motions to Dismiss, filed respectively by (1) Defendants Snohomish County, Snohomish County Superior Court, Paul W. Thompson, Jacalyn Brudvik, and Jennifer Langbehn (the "Snohomish County Defendants"); and (2) Defendant State of Washington (collectively, "Defendants"). Dkt. Nos. 21 and 24. Defendants seek dismissal of

ORDER GRANTING
MOTIONS TO DISMISS
 - 1

1  the First Amended Complaint, which attempts to state three causes of action under 42 U.S.C. §

2  1983 and the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. Having

3  reviewed the briefs filed in support of and in opposition to the motions, the First Amended

4  Complaint, and the exhibits attached thereto, the Court finds and rules as follows.[1]

## II.    BACKGROUND

6    The following facts, as stated in the First Amended Complaint ("FAC"), are taken as true

7  for purposes of the instant motions.[2] Plaintiff Gina Bloom (f/k/a Olimpia Georgiana Yorks) and

8  Brian Yorks were married in 2008 and share two minor children, M.Y. and B.Y. In 2020, Yorks

9  filed for divorce. Bloom alleges a "history of domestic violence by Mr. Yorks against Ms.

10  Bloom," and in March 2020 was granted an Order for Protection, giving her temporary custody of

11  the children. FAC, p. 9, ¶ 3; Ex. B.

12    In January 2021, the court appointed attorney Brian Parker as the children's Guardian Ad

13  Litem ("GAL"). *Id.*, p. 10, ¶ 7. In August 2021, Bloom filed a grievance against GAL Parker,

14  alleging "misconduct and extrinsic fraud upon the court." FAC, p. 17, ¶ 51. Snohomish County

15  Superior Court Judge Paul Thompson, acting as Chair of the Snohomish Superior Court Family

[1] After Defendants filed their Motions to Dismiss, Plaintiff filed a First Amended Complaint (or, to be precise, a superfluous and unopposed Motion for Leave to Amend the Complaint, which leave she was entitled to as a matter of course under Federal Rule 15(a)(2)). The parties then completed briefing on the Motions to Dismiss. Those motions were technically filed seeking dismissal of the original Complaint. However, having consulted the parties and obtained their unanimous consent, the Court determines that the instant Motions to Dismiss may be construed as seeking dismissal of the operative First Amended Complaint.

[2] Separate from the Motions to Dismiss, Bloom filed a "Motion for Judicial Notice," Dkt. No. 19, asking the Court to take judicial notice of a number of exhibits. It is not clear what about the exhibits, or what specific facts contained in those exhibits, Bloom is asking the Court to take notice of, or for what purpose. Furthermore, while some of the documents were also attached to Bloom's First Amended Complaint, most of the information in the proffered exhibits is not properly subject to judicial notice under Federal Rule of Evidence 201 (*see, e.g.*, Ex. E, email from Bloom to Snohomish County re GAL Parker). For purposes of the instant Motions to Dismiss, the Court takes the well-pleaded allegations in the FAC as true, and has cited the exhibits attached to the First Amended Complaint to the extent they are relevant to those allegations, but otherwise finds the exhibits attached to the Motion for Judicial Notice are immaterial to the Court's ruling on the Motions to Dismiss. The Motion for Judicial Notice is, accordingly, denied.

ORDER GRANTING
MOTIONS TO DISMISS
- 2

Law Committee, reviewed and dismissed that grievance. *Id*.

On October 29, 2021, then-Commissioner Pro Tem Jacalyn Brudvik held an ex parte hearing on a motion by Yorks, and subsequently entered the "Immediate Restraining Order," which removed the children from Bloom's custody and placed them with Yorks. FAC, ¶¶ 1, 23; Ex. G. Bloom claims that in entering the order, Brudvik relied on "fraudulent representations" provided by GAL Parker. FAC, ¶¶ 7, 37.

Starting in May 2022, Judge Thompson presided over the Bloom-Yorks dissolution trial, which also involved setting the children's parenting plan. During the proceedings, Judge Thompson reminded the parties that several months earlier, he had reviewed and ultimately dismissed Bloom's complaint against GAL Parker, and was advised by Bloom's counsel that Bloom did not "have any problem with proceeding." FAC, Ex. N, p. 120. After hearing testimony during the trial from GAL Parker, among others, Judge Thompson found, with regard to Bloom, "a long-term emotional and/or physical problem that gets in the way of her ability to parent," and that "[Brian] Yorks committed acts of Domestic Violence in the marriage." FAC, ¶¶ 62, 57. Based on these and other factual findings, Judge Thompson issued an oral ruling, and adopted a phased parenting plan, which among other things granted Yorks custody and initially limited Bloom's decision-making authority over the children. *Id*., ¶ 57; Ex. Q.

Bloom appealed the ruling. In January 2023, Bloom also filed another grievance against GAL Parker concerning the testimony he gave in the divorce proceedings. FAC, ¶ 70. Judge Thompson again reviewed, and dismissed, the grievance. *Id*., ¶ 71.

In February 2024, the Washington Court of Appeals issued its opinion in the matter of Bloom's appeal of the parenting plan. FAC., Ex. Cc. While "largely uphold[ing] the trial court's orders, including the restrictions imposed on Gina," the appellate court reversed certain rulings

ORDER GRANTING
MOTIONS TO DISMISS
- 3

made at trial, and also held that "the trial court failed to make required accompanying findings for each of its parenting decisions." *Id*., p. 129. The Court of Appeals remanded the matter, directing the trial court "to make express findings—if the current record before it allows—as to whether (i) the children would be safe with Brian [Yorks] and there is no remote possibility he would commit domestic violence again, or (ii) the children were not impacted by the history of domestic violence." *Id*., p. 134.

After the mandate was filed with the trial court, Judge Thompson issued an order of recusal, transferring the case to Snohomish County Superior Court Judge (and Defendant in this case) Jennifer Langbehn. FAC, ¶ 86; Ex. Gg. In his recusal order, Judge Thompson referred to his role in dismissing Bloom's grievances and perjury accusations against GAL Parker, and asserted that he had unspecified "information outside the record" on the matter.[3]

On November 24, 2024, Judge Langbehn issued the "Additional Findings of Fact and Order Following Remand," based entirely on the record developed in proceedings before Judge Thompson, as directed by the Court of Appeals. FAC, ¶ 94; Ex. Ll. Relying only on "agreed or undisputed testimony and exhibits," Judge Langbehn found that Brian Yorks's "conduct, during acts of proven and alleged domestic violence towards [Bloom], did not have an impact on the children, based on the record before the court." *Id*., p. 444. Judge Langbehn also found, based on specific, undisputed evidence presented at trial, that the record supported Judge Thompson's conclusion that "decision-making should lie with Mr. Yorks." *Id*., p. 447. On December 30, 2024, Bloom initiated the instant lawsuit.

---

[3] Bloom had filed a report with the Everett Police Department ("EPD"), accusing GAL Parker of multiple instances of perjury at trial. FAC, Ex. Y. In October 2023, after investigation, the EPD referred one count of "Perjury 1st Degree" to the Snohomish County Prosecuting Attorney for charging consideration. It is not clear from the record whether Parker was charged or how this matter was resolved, but Bloom avers that at some point she learned that Parker was no longer listed as a GAL in Snohomish County. FAC, ¶ 79.

ORDER GRANTING
MOTIONS TO DISMISS
- 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### III.    DISCUSSION

#### A.  Standard on Motion to Dismiss

Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Critically in this case, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

ORDER GRANTING
MOTIONS TO DISMISS
- 5

**B.  Whether the *Rooker-Feldman* Doctrine Bars Jurisdiction Over Plaintiff's Claims**

**1.  The *Rooker-Feldman* Doctrine**

Defendants argue that this Court lacks jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. That doctrine bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This bar to jurisdiction covers direct appeals from state court judgments, *de facto* appeals from state court judgments in which the district court is "in essence being called upon to review the state court decision," and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir.2003); *see also Doe v. Mann*, 415 F.3d 1038, 1042 (9th Cir.2005).

"To determine whether an action functions as a de facto appeal, [courts] 'pay close attention to the relief sought by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). In *Noel v. Hall*, the Ninth Circuit provided a test to determine whether the doctrine applies: "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." 341 F.3d at 1164.

**2.  Whether Plaintiff's Claims Are Barred Under the *Rooker-Feldman* Doctrine**

In an apparent attempt to avoid application of the *Rooker-Feldman* doctrine, Plaintiff amended her original complaint to state that she "expressly acknowledges the realm and

ORDER GRANTING
MOTIONS TO DISMISS
- 6

jurisdiction of the Washington State Family Court over matters related to the family and as such does not challenge the trial courts' orders." FAC, p. 40.[4] However, under the headline "Relief Sought," Plaintiff seeks a declaratory judgment "that Defendant's [*sic*] violated Plaintiff's First, Fourth, Fifth and Fourteenth Amendment rights, with specificity, her Substantive and Procedural Due Process Rights," and seeks an award of damages therefor. *Id*. A more careful examination of the FAC, claim by claim, is therefore required to determine whether Plaintiff is in fact "assert[ing] as a legal wrong an allegedly erroneous decision by a state court, and seek[ing] relief from a state court judgment based on that decision," thus implicating *Rooker-Feldman* and divesting this Court of jurisdiction. *Noel*, 341 F.3d at 1164.

### a. First Cause of Action

Plaintiff's First Cause of Action is brought under the First, Fourth, Fifth, and Fourteenth Amendments, purportedly against all Defendants except Judge Langbehn. Against Judge Thompson, Plaintiff asserts the following:

> Judge Thompson, in his administrative role, dismissed Plaintiff's first complaint against GAL Mr. Parker for extrinsic fraud, misrepresentation, and bias. . . . Judge Thompson failed to properly investigate or provide any justification for dismissing the [complaint], thus directly violating [Guardian Ad Litem Rule] 7 and RCW 42.20.100. . . . [This decision] facilitat[ed] and ensur[ed] the denial of Plaintiff's opportunity for any fairness or impartiality in proceedings and thus directly allow[ed] for the unreasonable and illegal seizure of Bloom's children. FAC, p. 30.

This claim is a direct challenge to Judge Thompson's dismissal of Bloom's first grievance against GAL Parker. It "asserts as a legal wrong an allegedly erroneous" state court decision— specifically, Judge Thompson's "fail[ure] to properly investigate" Bloom's grievance, in violation

---

[4] Plaintiff's original Complaint explicitly asked this Court to "reverse and remand, as null and void, all [Washington state court] judicial proceedings beginning on October 29, 2021…" Compl. at 31, ¶ 138(a). Likely recognizing that this request for relief ran headlong into *Rooker-Feldman*'s jurisdictional bar, Bloom amended the pleading and deleted this language.

ORDER GRANTING
MOTIONS TO DISMISS
- 7

of state law—from which the federal complaint seeks relief (*i.e.*, a declaratory judgment and damages). The claim thus falls squarely within the test outlined by the Ninth Circuit in *Noel*. Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to adjudicate Plaintiff's First Cause of Action against Thompson.

Plaintiff's First Cause of Action also explicitly asserts a claim against Commissioner Brudvik. Plaintiff alleges that Commissioner Brudvik:

> issued an exparte order, detrimentally impacting Ms. Bloom's fundamental liberty interest in the care custody and control of her children. The decision was based solely on unsubstantiated and unchallenged hearsay testimony and GAL Mr. Parker's extrinsic fraud, false representations and malicious recommendations. . . . Further, Commissioner Brudvik made no express findings to support her ruling, in violation of RCW 2.28.210. FAC, pp. 30-31.

Again, this claim identifies an allegedly erroneous state court order as a legal wrong, and asks the Court to review its legality—to determine, for example, whether Commissioner Brudvik improperly relied on hearsay, or failed to make findings required by law—again implicating *Rooker-Feldman*. This Court has no jurisdiction to entertain this claim.

In responding to the Snohomish County Defendants' Motion to Dismiss, Plaintiff argues that her claims are not subject to *Rooker-Feldman*'s jurisdictional bar, for several reasons. First, she argues that "[t]he Ninth Circuit explained that *Rooker-Feldman* applies only when a federal plaintiff seeks to undo a state court judgment." Pl.'s Opp. at 7 (citing *Noel*, 341 F.3d at 1155). Plaintiff repeatedly insists she is not challenging the state court orders, but "the misconduct, fraud, and resulting constitutional violations that corrupted the judicial process." *Id*. The allegations from her complaint quoted above, however, directly contradict this assertion. Despite her conclusory denials, "undo[ing] a state court judgment" is exactly what Plaintiff is attempting to accomplish here.

ORDER GRANTING
MOTIONS TO DISMISS
- 8

Second, Plaintiff argues that "Rooker-Feldman does not apply alleging extrinsic fraud upon the court." Pl.'s Opp. at 8 (*sic*). Plaintiff relies on *Kougasian v. TMSL, Inc.,* for the proposition that federal courts are not barred under *Rooker-Feldman* and "may set aside judgments obtained through fraud." 359 F.3d 1136, 1140-41 (9th Cir. 2004). In *Kougasian*, however, the plaintiff did "not seek to set aside the judgments of [the state courts] based on alleged legal errors by those courts," as Plaintiff does here. *Id*. Instead, Kougasian was in federal court suing the *adverse parties* (not the judges) from the state court proceedings who, she alleged, had committed fraud upon the state courts, tainting those courts' rulings. These facts are materially distinct from those presented here. Critically, Bloom is not suing Parker (the alleged fraudster) or her ex-husband (the adverse party in the state court proceedings) for fraud. She is suing the judges, whom she *does* claim committed "legal errors." *See, e.g*., FAC, p. 30 ("Judge Thompson failed to properly investigate or provide any justification for dismissing the [complaint], thus directly violating" state law.). As such, her claims are outside the exception outlined in *Kougasian*. 359 F.3d at 1140.

Third, Plaintiff argues that "[f]ederal courts have jurisdiction over claims alleging violations of constitutional rights, including due process violations, even when arising from state court proceedings." Pl.'s Opp. at 8-9. While this statement may be true, it does not follow—and it is not the law—that a plaintiff may challenge the legality of a state court judgment in federal district court as long as she is asserting federal constitutional violations. To the contrary, the Ninth Circuit has held that constitutional challenges to state court rulings are barred under *Rooker Feldman* where those "constitutional claims and related claims in this federal suit are inextricably intertwined with the state court's denial of relief," as they are here. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 899 (9th Cir. 2003); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1142 (9th

ORDER GRANTING
MOTIONS TO DISMISS
- 9

Cir. 2021) (*Rooker-Felman* "applies even where the challenge to the state court decision involves federal constitutional issues, including section 1983 claims.") (citation omitted).

Finally, Plaintiff suggests that *Rooker-Feldman* does not apply where a plaintiff seeks only retroactive relief (damages) and "does not seek reversal" of the state court's order. Pl.'s Opp. at 11. However, Plaintiff fails to cite, and the Court was unable to identify, any Ninth Circuit authority in support of such a distinction. *But see, e.g., Garry v. Geils*, 82 F.3d 1362, 1370 (7th Cir. 1996) ("The plaintiffs contend that while their request for injunctive relief may have been barred by *Rooker–Feldman*, their damages claim was not. They provide no legal authority for this argument. We have previously applied *Rooker–Feldman* to damages claims in similar cases."). And indeed, any awarding of damages for Plaintiff's First Cause of Action would necessarily depend upon this Court finding that Plaintiff had suffered a "legal wrong" stemming from an "erroneous decision by a state court," precisely the *de facto* appellate review that *Rooker-Feldman* proscribes. *Noel*, 341 F.3d at 1164. For the foregoing reasons, the Court holds that it lacks jurisdiction to review Plaintiff's First Cause of Action.

### b. Second Cause of Action

Plaintiff's Second Cause of Action, against all Defendants except Commissioner Brudvik, is also brought under the First, Fourth, Fifth, and Fourteenth Amendments. In it, Plaintiff alleges that Judge Thompson "failed to properly recuse himself from the trial in violation" of state and federal constitutional law. FAC, p. 33. Plaintiff also challenges Judge Thompson's "final orders" following the trial. She contends that Thompson "misstated" the evidence, "fail[ed] to adhere to the appropriate level of due process, including a full and complete review of the record," and "squelched her speech, removed her custodial rights, labeled her a domestic violence offender and forced considerable financial obligations upon" her. FAC, pp. 33-34. She also challenges Judge

1    Thompson's dismissal of her second grievance against GAL Parker, which grievance she

2    contends he "dismissed without any specific findings or procedural due process, in violation of

3    SCLGALR 7.1"; Thompson's "failure" to timely recuse himself after remand following her

4    appeal; and the language Judge Thompson included in his eventual recusal order. FAC, pp. 34-35

5    ("Judge Thompson's behavior, is remiss and, on its face, bias, lack of any legal findings and

6    obvious bias amount to abuse of discretion.") (*sic*).

7         The Second Cause of Action also challenges the court orders of Judge Langbehn, who

8    assumed jurisdiction over the dissolution proceedings after remand. She alleges that Judge

9    Langbehn's findings "were not supported by a plain review of the record," and that Langbehn

10   "made such findings that would have required credibility determinations, pointing to the need for

11   a new trial, although it was denied." *Id*., p. 36. All Defendants named in the Second Cause of

12   Action, Plaintiff asserts, "contribut[ed] to the alleged act(s) and omissions," and are liable to her

13   for violation her constitutional rights and under state and federal law.

14        This Court lacks jurisdiction over Plaintiff's Second Cause of Action for the same reasons

15   it lacks jurisdiction over her first. As excerpted above, Plaintiff's Second Cause of Action is

16   "assert[ing] as a legal wrong an allegedly erroneous decision by a state court"—for example,

17   Judge Thompson's rulings with respect to recusal—"and seek[ing] relief from a state court

18   judgment based on that decision," in this case, in the form of damages. *Noel*, 341 F.3d at 1164.

19   Under a straightforward application of the *Rooker-Feldman* doctrine, this Court has no

20   jurisdiction over Plaintiff's Second Cause of Action.

21                    **c.  Third Cause of Action**

22        Plaintiff's Third Cause of Action is titled "*Monell*-Related Claims Against all

23   Defendants." FAC, p. 36. Plaintiff alleges that all Defendants "have established and/or followed

24   
25   ORDER GRANTING
     MOTIONS TO DISMISS
     - 11

1    or are following policies, procedures, customs, usages and/or practices" that "were the moving

2    force behind the violations of Plaintiff's constitutional rights as alleged herein." *Id*. Under *Monell*

3    *v. Department of Social Services*, a municipal entity "cannot be held liable under § 1983 on a

4    *respondeat superior* theory." 436 U.S. 658, 691 (1978). Instead, municipalities "can be sued

5    directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is

6    alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

7    decision officially adopted and promulgated by that body's officers." *Id*. at 690.

8        The alleged customs or policies that Bloom challenges include:

9        a. The custom or Policy of adopting the opinions and recommendations of the
         Court appointed Guardians ad Litem (GAL(s)) absent any additional procedural
10       or substantive safeguards, to ensure fairness.

11       b. The custom or Policy of the Court to adopt the GAL recommendation without
         any review of the record, application of evidence rules, or rigors of admissibility
12       determinations.

13       c. The custom or Policy of deliberate indifference and dismissal of GAL
         grievances without due process and adherence to the laws and regulations
14       dictating GAL rights and duties.

15       d. The custom or Policy of removing children from a parent's custody without
         exigent circumstances, consent or due process of law, but based on GAL
16       recommendations alone.

17       e. The custom or Policy of allowing private counsel to select and recommend
         certain GALs, certain doctors and certain other services that are inextricably
18       intertwined with the Defendants' insulated judicial economy, ongoing economic
         growth, and necessarily insulated from outside oversight and accountability.

19
         f. The custom or Policy of allowing "abuse of process" claims against parents in
20       Family Court to subsume that parent's rights to redress from the Court and law
         enforcement services within Defendant State and County.

21
         g. The custom or Policy of denying citizen participants subject to the Court the
22       right to jury trial.

23       h. The custom or Policy of turning legitimate grievances as to the Court or

24   ORDER GRANTING
     MOTIONS TO DISMISS
25    - 12

Defendant actors, State assigned GALs and Judicial misconduct into evidence of a party's abusive use of conflict and harassment.

i. The custom or Policy of accepting allegations of perjury and fraud as to Court actors, State assigned GALs, and Judicial misconduct, as de facto evidence of the alleging parties' mental instability or infirmity. FAC, pp. 37-38

Plaintiff also claims that each Defendant "breached its duties and obligations to Plaintiff Bloom and her minor children by . . . failing to properly select, supervise and train, control and review its agents and employees as to their compliance with Constitutional safeguards with deliberate indifference.").[5] FAC, p. 38.

These alleged "customs or policies" underlying Plaintiff's Third Cause of Action fall into two broad categories: first, "customs or policies" related to rulings issued by the Judicial Defendants, such as the "custom or Policy of removing children from a parent's custody without exigent circumstances, consent or due process of law, but based on GAL recommendations alone"; the "custom or Policy of deliberate indifference and dismissal of GAL grievances without due process"; and the "custom or Policy of denying citizen participants subject to the Court the right to jury trial." FAC, pp. 37-38. The second category includes "policies and practices that enabled systemic constitutional violations by failing to train, supervise, and oversee GALs." Pl.'s Opp. at 11; *see also* FAC p. 32 ("[T]he County failed to take sufficient corrective action, such as implementing oversight mechanisms, enforcing ethical guidelines, or providing training for GALs.").

---

[5] Plaintiff avers that these alleged customs and policies "are part and parcel to the overall and inherent organizational effort of Defendant's [*sic*] to grow and perpetuate their professional influence, social-political power while maintaining collegiate [*sic*] and professional alliances necessary to copromote all the Defendant's [*sic*] professional and financial gain while insulating themselves from outside oversite [*sic*] and accountability adopting the opinions and recommendations of the Court appointed Guardians ad Litem (GAL(s)) absent any additional procedural or substantive safeguards." FAC, p. 38.

ORDER GRANTING
MOTIONS TO DISMISS
- 13

Plaintiff's challenge to the first category of purported customs and policies, which relates to alleged errors in judicial rulings, is barred by *Rooker-Feldman*. While cloaked in the language of "customs and policies," each of these claims is actually a direct challenge to "an allegedly erroneous decision by a state court," from which Plaintiff "seek[s] relief." *Noel*, 341 F.3d at 1164. Plaintiff's challenge to the "custom or Policy of adopting the opinions and recommendations of the Court appointed Guardians ad Litem," for example, can only be interpreted as a challenge to the orders of the Snohomish Superior Court. In fact, review of the "custom or policy" paragraphs a.-i., above, reveals that each paragraph is an attempt to state a legal wrong arising out of an "allegedly erroneous decision" by the Superior Court. Under the analysis outlined in detail above as to the First and Second Causes of Action, such claims are barred under *Rooker-Feldman* and they are, accordingly, dismissed with prejudice.

The Court concludes, however, that the second category of "customs and policies," through which Defendants allegedly "enabled systemic constitutional violations by failing to train, supervise, and oversee GALs," does not fall under the *Rooker-Feldman* analysis. Pl.'s Opp. at 11. The claim as framed in this way asserts the "legal wrong" not of erroneous state court decisions, but of the alleged customs or policies governing the County's GAL program, and are therefore not barred under *Rooker-Feldman*. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021) (*Rooker-Feldman* does not apply where plaintiffs "allege that the misrepresentations [to state court] . . . and further inaction by [County] social workers and other County employees resulted in violations of their constitutional rights."). To the extent the Third Cause of Action is challenging the County's purported customs or policies regarding the training and supervision of GALs, and not the rulings of the state court, therefore, this Court does not lack jurisdiction under the *Rooker-Feldman* doctrine.

### C.  Whether Plaintiff's Third Cause of Action States a Claim

Determining that this Court has jurisdiction over this aspect of Plaintiff's Third Cause of Action is not the end of the inquiry. Defendants move for dismissal on several additional grounds, which the Court addresses in turn.

#### 1.  Whether Defendants Brudvik, Thompson and Langbehn Are Entitled to Absolute Judicial Immunity

Defendants Brudvik, Thompson, and Langbehn (the "Judicial Defendants") seek dismissal of all claims against them based on the doctrine of absolute judicial immunity. It is well-settled that judges are generally immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority. *Meek v. Cnty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999) (citing *Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). This protection is not for the "benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 553-554 (1967).

Plaintiff contends that Judges Thompson and Langbehn are not entitled to judicial immunity.[6] As Plaintiff correctly points out, that doctrine does not extend to administrative, legislative, or executive functions that judges may on occasion perform. *Forrester v. White*, 484 U.S. 219, 227 (1988). The question therefore becomes whether the acts for which the Judicial Defendants are being sued are judicial in nature, which includes consideration of whether: (1) the

---

[6] Plaintiff does not dispute that Commissioner Brudvik is entitled to judicial immunity. For this reason and for the reasons discussed above with respect to Judges Thompson and Langbehn, all claims against Brudvik are dismissed with prejudice.

precise acts are a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity. *Meek*, 183 F.3d at 967.

The Court has no trouble concluding that all of the actions performed by the Judicial Defendants for which Plaintiff seeks relief were judicial in nature. These actions—as laid out in more detail above—include such duties as reviewing and ruling on grievances against GAL Parker; evaluating whether to recuse oneself from a case; hearing evidence and issuing decisions in the course of a dissolution proceeding; and making findings based upon review of a trial court record. Each of these "normal judicial functions" was performed in chambers or open court and in direct connection with the Bloom-Yorks dissolution proceedings. Plaintiff's conclusory insistence that these actions were "administrative" does not make them so, and is not supported by common sense or any authority on point.

Plaintiff also attempts to salvage her claims against the Judicial Defendants by asserting that they were acting without jurisdiction. A "judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Meek*, 183 F.3d at 965 (citing *Mireles*, 502 U.S. at 11–12). As to Judge Thompson, Plaintiff argues—again without any precedent on point—that he lost jurisdiction when his law clerk sent the parties an email signaling the judge's intent to recuse himself. That such an act would divest the judge of jurisdiction is nonsense and again, unsupported in the law. As to Judge Langbehn, Plaintiff contends that she lost jurisdiction by ruling on a motion 93 days after its submission, allegedly three days outside the 90-day deadline prescribed by statute. *See* RCWA 2.08.240. Washington courts have squarely held that such delay does not divest the court of jurisdiction. *See, e.g.*, *Hannigan v. Novak*, 197 Wn. App.

ORDER GRANTING
MOTIONS TO DISMISS
- 16

1   1017 (2016) ("[V]iolation of RCW 2.08.240 does not result in loss of jurisdiction.").

2          In sum, all three Judicial Defendants are entitled to absolute immunity. They are hereby

3   dismissed with prejudice, as Plaintiff has not proposed (and the Court is unable to imagine) any

4   plausible amendment that might cure this defect.

5          **2.   Whether State of Washington Should Be Dismissed**

6          The State of Washington (the "State") seeks dismissal of Plaintiff's remaining claims

7   against it, based both on Eleventh Amendment immunity and on the text of 42 U.S.C. § 1983,

8   under which a state is not a "person" and thus cannot be sued. *Will v. Michigan Dep't of State*

9   *Police*, 491 U.S. 58, 64 (1989). The State also seeks dismissal for Plaintiff's failure to state a

10  claim on which relief may be granted. In response, Plaintiff concedes "that Washington State,

11  itself, cannot be sued as an entity in federal court, and is strictly speaking not a 'person,' for the

12  purposes of litigation and liability." Pl.'s Opp., p. 2. Her claims against the State are, accordingly,

13  dismissed.

14         Plaintiff requests that she be granted leave to amend her claims against the State, "to name

15  State of Washington Officials, Officers, Offices, Entities and/or Representatives, aka State's John

16  Doe 1-10, operating and on behalf of the State of Washington." Pl.'s Opp., pp. 1-2. According to

17  Plaintiff, Washington State officials, including the Washington State Attorney General, are liable

18  for failing to correct "GAL irregularities and procedural departures," and were "aware of the

19  phenomenal injustice that could and does result from the mismanagement of the State GAL

20  Program that resulted in constitutional violations." *Id.*, pp. 4, 6. But neither the First Amended

21  Complaint (which was filed after the State's Motion to Dismiss identified the deficiencies in the

22  original complaint), nor Plaintiff's Opposition to the State's Motion to Dismiss, proffers any facts

23  or legal authority supporting Plaintiff's suggestion that the State or its officials might be liable for

24
    ORDER GRANTING
    MOTIONS TO DISMISS
25   - 17

the actions or omissions of the Snohomish County GAL program. While Plaintiff alleges that she repeatedly sent emails to the Washington Attorney General's Office with notice of violations committed by GAL Parker, it is not evident that that office had any duty to respond to those emails, let alone cure the alleged violations. Plaintiff's suggestion that she may yet unearth claims against state officials is both too vague, and too frivolous, to merit leave to amend her claims against the State. That request is therefore denied, and all claims against the State are dismissed with prejudice.

### 3. Whether Snohomish County Superior Court Is Subject to Suit

The Snohomish County Defendants seek dismissal of Snohomish County Superior Court. They argue that the court is not a legal entity with capacity to sue or be sued. Under Washington law, it is the counties themselves, and not departments within those counties, that are authorized to sue or be sued. RCWA 36.01.010; *see Iceberg v. Washington Ct. of Appeals Div. One*, No. C21-493RSM, 2021 WL 1401534, at *3 (W.D. Wash. Apr. 14, 2021) (noting that "suing King County Superior Court was improper because it was not a separate legal entity with the capacity to be sued"). Plaintiff does not dispute that Snohomish County Superior Court lacks capacity to be sued, and that entity is dismissed from this lawsuit with prejudice.

### 4. Whether Plaintiff Has Stated a Claim Against the County Under *Monell*

Based upon the foregoing analysis, the only claim remaining is Plaintiff's Third Cause of Action against Snohomish County (the "County"), brought under *Monell v. Department of Social Services* and § 1983, challenging "customs and policies" related to training and oversight in the County's GAL program. To state a *Monell* claim, a plaintiff must assert "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right;

ORDER GRANTING
MOTIONS TO DISMISS
- 18

and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citations omitted). "In the motion to dismiss context, the Ninth Circuit has made clear claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 933 (S.D. Cal. 2022) (citing *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)). That is to say, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Tulare*, 666 F.3d at 637.

The Court concludes that the Third Cause of Action does not "contain sufficient allegations of underlying facts" required to create a plausible inference of a custom or policy that might have been the moving force behind Plaintiff's claimed injuries. *Id.* "Absent a formal governmental policy," which cannot be reasonably inferred based on Plaintiff's allegations,[7] Plaintiff "must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992)). At the pleading stage, a "[p]laintiff must do more than allege in a conclusory fashion that the County maintains an unwritten policy or custom of permitting the types of wrongs Plaintiff experienced." *Segura*, 647

---

[7] Plaintiff has not cited any statutes, regulations, rules, or other written or official policies from which "a formal governmental policy" could be inferred. To the contrary, many of the alleged actions from which she claims injury resulted from Defendants' *departure* from such written rules. *See, e.g.*, ¶ 97 ("Judge Langbehn's held her decision from August 13, 2024, until November 14, 2024 (93 days) in violation of RCW 2.08.240."); p. 31, ¶ 10 ("Commissioner Brudvik made no express findings to support her ruling, in violation of RCW 2.28.210, Commission on Judicial Conduct (CJC) 2.2, 2.5 and 2.6."); pp. 34-35, ¶ 8 ("Judge Thompson handled the review and dismissed the matter as unfounded without any specific findings or procedural due process, in violation of SCLGALR 7.1."). While a plaintiff may also support the second element of a *Monell* claim by alleging that "the individual who committed the constitutional tort was an official with final policy-making authority," *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (citation omitted), Plaintiff has also made no attempt to argue or allege facts giving rise to such an inference in this case.

ORDER GRANTING
MOTIONS TO DISMISS
- 19

F. Supp. 3d at 936 (citing *Tulare*, 666 F.3d at 637–38).

Plaintiff's *Monell* claim fails to meet this standard set under *Twombley*, *Iqbal*, and *Tulare*. The First Amended Complaint is devoid of any "allegations of underlying facts" supporting an inference of a "custom or policy" regarding the County's GAL program. *See* FAC, Third Cause of Action, pp. 37-38 (listing purported customs or policies that relate exclusively to judicial rulings, not to training and oversight in GAL program). In opposing the Snohomish County Defendants' Motion to Dismiss, Plaintiff offers no more than conclusory recitations of the elements of a *Monell* claim. For example, Plaintiff alleges that "Snohomish County failed to properly train and oversee GALs, including GAL Brian Parker, who engaged in misconduct during Plaintiff's custody proceedings." Pl.'s Opp. at 12 ("[T]he County's failure to address complaints against GAL Parker enabled misconduct violating Plaintiff's constitutional rights."). Even where she claims to have "specific examples of systemic failures by Snohomish County that led to constitutional rights deprivations," Plaintiff cites to a paragraph in the First Amended Complaint that provides no such thing. *See* Pl.'s Opp. at 11 (citing FAC, p. 12, ¶ 23) ("23. That afternoon, starting at 2:07 pm on October 29, 2021, Protem Commissioner Jacalyn Brudvik of Snohomish County Superior Court, heard the exparte emergency hearing for Immediate Order of Restraint against Ms. Bloom in favor of Mr. Yorks (Ex. E)."). This allegation is hardly the kind of "specific example" of a failure of any sort, let alone a "systemic failure" in the GAL program at the root of Plaintiff's claimed constitutional violations.[8] The Third Cause of Action challenging customs and

---

[8] Plaintiff's oblique references to ethical violations and other misconduct involving the Snohomish County Voluntary Guardian Ad Litem ("VGAL") program in 2015-16 lend no factual support to Plaintiff's assertion that she was injured pursuant to a County custom or policy. In the *Matter of Dependency of A.E.T.H.*, the Washington Court of Appeals reversed the lower court's parental rights termination order, based in part on evidence of misconduct by the VGALs involved in the case. 9 Wn. App. 2d 502 (2019). That case highlighted "pervasive and egregious" misconduct by the volunteers and staff within the Snohomish County VGAL program, actual and perceived conflicts of interest within the Snohomish County Attorney's Office and the Snohomish County Superior

policies within the Snohomish County's GAL Program is, accordingly, dismissed.

This dismissal is without prejudice. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind that "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); *see also Tulare,* 666 F.3d at 637 (district court "abused its discretion when it denied AE the opportunity to allege additional facts supporting the claim that [defendants'] alleged constitutional violations were carried out pursuant to County policy or custom."). Plaintiff is entitled to an opportunity to amend her First Amended Complaint to include "sufficient allegations of underlying facts" giving rise to a reasonable inference that a County "custom or policy" related to the GAL program gave rise to the wrongs Plaintiff claims to have experienced.[9] Failure to do so, as prescribed herein, will result in dismissal with prejudice.

### IV.    CONCLUSION

For the foregoing reasons, the Court:

1. Denies the Motion for Judicial Notice, Dkt. No. 19;

2. Dismisses Plaintiff's First and Second Causes of Action and, as detailed above, the

---

Court, and myriad other instances of impropriety, which the Court of Appeals concluded gave rise to violations of the parents' constitutional rights. 9 Wn. App. 2d at 512. It is not clear (or even explicitly alleged) that the policies discussed in *AETH* were at play in the case before this Court and if so, what those policies were. The most substantial connection Plaintiff is able to conjure between the 2016 scandal and her own case is speculation that "[s]eemingly, the County has taken no remedial efforts to resolve the ongoing injustices to families and children." Pl.'s Opp. at 12. The amount of time that has passed since the misconduct outlined in *AETH* took place—some six years—and more importantly, the complete absence of any allegations in this case connecting it to the transgressions highlighted in *AETH*, render Plaintiff's reliance on this historical injustice misplaced.

[9] By identifying this deficiency in Plaintiff's Third Cause of Action, the Court does not suggest that Plaintiff has, apart from this deficiency, necessarily stated a claim on which relief could be granted. For example, as Defendants point out, a *Monell* claim against a municipality will not lie in the absence of an underlying constitutional violation by a municipal officer. *See* Snohomish County Defs.' Rep. at 7 (citing *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020)). It is far from clear that Plaintiff has met this requirement in this case.

Third Cause of Action to the extent it "asserts as a legal wrong an allegedly erroneous decision by a state court," with prejudice, for lack of jurisdiction under the *Rooker-Feldman* doctrine;

3. Dismisses the Judicial Defendants (Brudvik, Thompson, and Langbehn), with prejudice, based upon the doctrine of absolute judicial immunity;

4. Dismisses the State of Washington, with prejudice, based upon Eleventh Amendment immunity;

5. Dismisses Snohomish County Superior Court, with prejudice, as an entity incapable of being sued; and

6. Dismisses the Third Cause of Action against Snohomish County to the extent it challenges the County's purported "customs or policies" as they relate to oversight and training of GALs, without prejudice. Plaintiff is granted leave to amend her Third Cause of Action against the County to cure the deficiencies in that claim, including (though not necessarily limited to) those identified above, and shall do so, if at all, no later than 30 days from the date of this order. Failure to cure such deficiencies will result in dismissal with prejudice of this claim.

7. All other motions pending in this matter are DENIED as moot.

DATED this 5th day of May, 2025.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING
MOTIONS TO DISMISS
- 22