The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GINA BLOOM, an individual;

    Plaintiff,

v.

SNOHOMISH COUNTY, a local governmental entity operating in the State of Washington,

    Defendant.

NO. 2:24-cv-2155

**ORDER GRANTING DEFENDANT SNOHOMISH COUNTY'S MOTION TO DISMISS**

## I.  INTRODUCTION

Defendant Snohomish County ("the County") moves this Court to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Third Amended Complaint filed by Plaintiff Gina Bloom (f/k/a Olimpia Georgiana Yorks) ("Bloom"). Dkt. No. 58. Bloom opposes the motion. Dkt. No. 61. Having reviewed the motion, opposition thereto, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.  BACKGROUND

### A.  Procedural History

Bloom initiated this lawsuit in December 2024 and filed an amended complaint in February 2025. Dkt. Nos. 1 and 26. Bloom brought claims against the County, Snohomish County Superior Court, Paul W. Thompson, Jacalyn Brudvik, and Jennifer Langbehn (the

ORDER GRANTING MOTION TO DISMISS - 1

"Snohomish County Defendants") as well as the State of Washington (collectively, "Defendants"), alleging claims under 42 U.S.C. § 1983 and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants moved to dismiss Bloom's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Dkt. Nos. 21 and 24. On May 5, 2025, this Court: (1) dismissed with prejudice Defendants Thompson, Brudvik, and Langbehn based on the doctrine of absolute judicial immunity, (2) dismissed with prejudice the State of Washington based on Eleventh Amendment immunity, (3) dismissed with prejudice Snohomish County Superior Court as an entity incapable of being sued, and (4) dismissed with prejudice the claims against the County pursuant to the *Rooker-Feldman* doctrine, except to the extent that Bloom challenged the County's purported "customs or policies" as they relate to oversight and training of GALs. The Court dismissed this claim without prejudice and granted Bloom leave to amend the claim.[1]

Bloom filed her Third Amended Complaint on June 4, 2025. Dkt. No. 55.[2] The County once again moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 58.

**B.    Factual Allegations**

Generally, the following facts, as stated in the Third Amended Complaint ("TAC"), are taken as true for purposes of this motion, except where directly contradicted by the exhibits attached to the TAC. Bloom and Brian Yorks were married in 2008 and share two minor children. In 2020, Yorks filed for divorce in Snohomish County Superior Court. Bloom alleges a "history of domestic violence by [] Yorks against [her]," and in March 2020 was granted an Order for Protection, giving her temporary custody of the children. TAC, ¶¶ 4.1-4.2.

---

[1] Plaintiff filed a motion for reconsideration of this Court's dismissal of her claims, which this Court denied. Dkt. Nos. 54 and 69.
[2] Plaintiff also filed a Fourth Amended Complaint, but this Court struck it from the record as untimely, among other reasons. Dkt. Nos. 56 and 70.

ORDER GRANTING MOTION TO DISMISS
- 2

Yorks was represented in the divorce proceedings by attorney Damon Canfield ("Canfield") and in January 2021, Canfield requested that a Guardian ad Litem ("GAL") be appointed to the case, citing concerns regarding Bloom's mental health. TAC, ¶ 4.3. Bloom alleges that instead of petitioning Snohomish County Superior Court for the appointment of a GAL, Canfield requested through "backchannels" that local family law attorney Brian Parker be appointed as the GAL. *Id*. 4.4, 4.6.

Bloom claims that "Canfield deliberately arranged the assignment of [Parker] to [her] divorce case with the intent to manipulate litigation and custody evaluation in favor of Yorks. In the five (5) months [Parker] served his appointment as GAL for Canfield, the County issued five (5) discrete GAL reports, each in response to a Canfield prompt, and methodically building upon the last, to shift the narrative to recast Yorks as the victim and [Bloom] as his abuser." TAC, ¶ 4.5. Bloom further alleges that "[i]n addition to the series of fraudulent reports accepted and thereby endorsed by the County Court, [Parker] was invited to testify against [her], at exparte [*sic*] and non-family law hearings, as well as her divorce trial, falsely representing medical conclusions and maliciously proclaiming that [Bloom] suffered from untreated mental health disorders when she categorically did not, all evidence being to the contrary. The County relied on [Parker's] conclusion related to medical and psychological concerns, unreasonably choosing to subordinate the doctors and expert opinions to that of [Parker]." *Id*. at 4.8.

Bloom asserts that the County has "knowingly established a set of customs, practices and policies" related to its GAL program including: (1) allowing attorneys to request specific GALs, (2) failure to train and provide oversight of GALs to ensure compliance with law, (3) "carte blanche" acceptance of GAL reports, testimony, and evidence, (4) prohibiting the ability to appeal or challenge GAL conduct or evidence, (5) shielding GALs from "outside scrutiny and

ORDER GRANTING MOTION TO DISMISS
- 3

oversight", and (6) withholding GAL-related records from the public. ¶ 5.2. She alleges that the foregoing "customs, practices, and policies" deprived her of her constitutional rights, including her rights "to freedom of speech, freedom from unreasonable search and seizure, and procedural and substantive due process rights" under "the Fourteenth Amendment to the U.S. Constitution," and therefore, the County is liable pursuant to 42 U.S.C. § 1983 under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *Id.* ¶¶ 4.14, 7.2, 7.10.

Bloom seeks compensatory damages and declaratory relief that the County GAL customs and policies are unconstitutional, as well as attorney's fees and costs. *Id.* ¶ 8.1-8.2.[3]

### III.  STANDARD OF REVIEW

Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

---

[3] The TAC also requests "money sanctions" pursuant to Washington State Courts General Rule 31.1. However, Bloom acknowledges in her opposition to the County's motion to dismiss that her request for monetary sanctions under Rule 31.1 was "in error" and no longer seeks them. Dkt. No. 61 at 14-15.

ORDER GRANTING MOTION TO DISMISS
- 4

Critically in this case, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Moreover, a court is not required to accept as true allegations that are contradicted by documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1988). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

## IV.   DISCUSSION

As stated above, Bloom alleges that the County maintains certain policies, customs, and practices through which it fails "to properly establish, administer, train, supervise, and oversee [its] GAL Program and manage its GALs, and that those customs, policies and practices violated [Bloom's] constitutional rights, causing lasting and irreparable damages to her and her children." TAC ¶ 1.2. The County moves to dismiss Bloom's claims on two grounds. It alleges that this Court does not have jurisdiction over the claims pursuant to the *Rooker-Feldman* doctrine. Alternatively, it alleges that even if the *Rooker-Feldman* doctrine does not apply, Bloom's claims fail as a matter of law.

### A.   Whether the *Rooker-Feldman* Doctrine Bars Bloom's Claims

The County argues that this Court lacks jurisdiction over Bloom's claims pursuant to the *Rooker-Feldman* doctrine. That doctrine bars suits "brought by state-court losers complaining of

ORDER GRANTING MOTION TO DISMISS
- 5

1  injuries caused by state-court judgments rendered before the district court proceedings

2  commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*

3  *Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This bar to jurisdiction covers direct

4  appeals from state court judgments, *de facto* appeals from state court judgments in which the

5  district court is "in essence being called upon to review the state court decision," and "any issue

6  raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its

7  judicial decision." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir.2003); *see also Doe v. Mann*, 415

8  F.3d 1038, 1042 (9th Cir.2005). "To determine whether an action functions as a de facto appeal,

9  [courts] 'pay close attention to the relief sought by the federal-court plaintiff.'" *Cooper v. Ramos*,

10 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th

11 Cir. 2003)). In *Noel*, the Ninth Circuit provided a test to determine whether the doctrine applies:

12 "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and

13 seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject

14 matter jurisdiction in federal district court." 341 F.3d at 1164.

15       The County asserts that Bloom's claims against it are nothing more than an "upset family

16 law litigant" who is attempting to "sue the state court in federal court for the results of her

17 dissolution lawsuit." Dkt. No. 66 at 1. This Court agrees that the genesis of this lawsuit is

18 Bloom's frustration with the outcome of the dissolution proceedings, in particular the fact that

19 Yorks was given custody of their children, and that most of the claims in the first two complaints

20 focused on the allegedly erroneous decisions by the state court. *See*, *e.g.*, Dkt. No. 12, Comp. at ¶

21 127 and Dkt. No. 26, First Amended Comp. at p. 36 (alleging that Defendant Judge Langbehm's

22 findings "were not supported by a plain review of the record," and that Judge Langbehm "made

23 such finds that would have required credibility determinations, pointing to the need for a new

24

25 ORDER GRANTING MOTION TO DISMISS
- 6

trial, although it was denied."). These claims were clearly barred by the *Rooker-Feldmen* doctrine. However, unlike the claims in the first two complaints, the claims in the TAC focus on what Bloom alleges are the "County's unconstitutional customs, policies, administrative practices, and acts of deliberate indifference that structurally and systematically denied [Bloom] access to a fair and impartial tribunal." Dkt. No. 61 at 8. These claims challenge the County's administration and oversight of the GAL Program, not the outcome of her dissolution proceedings. Indeed, Bloom seeks declaratory relief "declaring that the policies, customs, and administrative practices of [the] County, including the deliberate shielding of GAL misconduct, destruction of evidence, and obstruction of public records, are unconstitutional under the Fourteenth Amendment." TAC at ¶ 8.2.[4] Therefore, the *Rooker-Feldman* doctrine is inapplicable, and this Court has jurisdiction over the claims. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021) (holding that the *Rooker-Feldman* doctrine did not apply to plaintiffs' claims alleging that "misrepresentations" by social workers in state court violated their constitutional rights; "[d]espite the judicial context" plaintiffs' claims were "not a de facto appeal from" the state court orders).

**B.      Whether Bloom Has Sufficiently Alleged a *Monell* Claim against the County**

**1.      *Monell* Liability**

Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. *Medina v. Planned*

---

[4] The TAC also requests compensatory damages for the psychological, emotional, physical, and financial damages allegedly inflicted on Bloom by the County's "illegal removal of her custodial rights." TAC at ¶ 8.1. The County argues that this request would require the Court to first determine that the state court decision to remove Bloom's custodial rights was in error, a conclusion that this Court agrees would be barred by the *Rooker-Feldman* doctrine. But Bloom is not requesting that this Court set aside the state court decision; rather, she asserts that the County caused her to lose her custodial rights due to its "knowing and willful unlawful acts and, or [*sic*] omissions, and an [*sic*] disregard for [her] rights" and she seeks compensatory damages for the harm caused by the County's alleged actions. This is not barred by the *Rooker-Feldman* doctrine.

ORDER GRANTING MOTION TO DISMISS
- 7

*Parenthood South Atlantic*, 145 S. Ct. 2219, 2229 (2025). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A government entity, like the County, may face section 1983 liability if it "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). However, a government entity cannot be held vicariously liable for the action of its employees under § 1983; rather, a plaintiff must show that the entity's policies, practices, or customs were the moving force behind the constitutional violation. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 694 (1978) (to establish municipal liability, a plaintiff must prove that their injury was caused by an action taken "pursuant to official municipal policy").

"Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, *i.e.* show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Alter by and through Alter v. County of San Diego*, 635 F. Supp. 3d 1048, 1055 (S.D. Cal. 2022) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010)). However, the Ninth Circuit has also made clear that "[i]n the motion to dismiss context, . . . *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 933 (S.D. Cal. 2022) (citing *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)). That is to say, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Tulare*, 666 F.3d

ORDER GRANTING MOTION TO DISMISS
- 8

at 637 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

        **2.**      **Bloom's *Monell* Allegations**

Bloom alleges that the County is liable under *Monell* because it maintains "customs, policies and practices" related to the "establishment, maintenance, training and oversight" of the GAL program that were "deliberate[ly] indifferen[t]" to Bloom's constitutional rights and were the moving force behind her injuries. TAC ¶ 1.1. Specifically, Bloom challenges the following policies, practices, and/or customs that she alleges the County maintains:

(a)      Allowing attorneys to "handpick" GALs for their cases;

(b)      Ignoring and/or summarily dismissing without procedural safeguards complaints about GALs;

(c)      Withholding, delaying, or obstructing public records requests related to GALs; and

(d)      Failing to train and/or oversee GALs to ensure compliance with the law.

TAC ¶¶ 5.5, 5.11, 5.17, and 5.23.

        **(a)**      **The County's practice of allowing attorneys to "handpick" GALs for their cases**

Bloom alleges that the County has a practice of allowing attorneys to "handpick" the GAL who is assigned to their case and that this practice resulted in the violation of her procedural and substantive due process rights because she was not afforded a neutral GAL. Specifically, Bloom claims that Canfield—her ex-husband's attorney—"deliberately arranged the assignment" of GAL Parker to their divorce proceeding "with the intent to manipulate [the] litigation and custody evaluation[s] in favor of [her ex-husband]." TAC ¶¶ 4.5, 5.7 (alleging that Parker's assignment to the divorce proceeding was a "premediated" scheme concocted with County employees to deprive Bloom of her constitutional rights). Bloom's assertion is undermined by the record evidence. Bloom attaches an email string to the TAC that

ORDER GRANTING MOTION TO DISMISS
- 9

demonstrates that originally the Judicial Coordinator for Snohomish County Superior Court appointed a woman named Renee DeFreece as the GAL in the divorce proceedings, but Ms. DeFreece was unavailable for the appointment. TAC, Ex. A at 6. The Judicial Coordinator then sent an email to Canfield and Linda Passey (Bloom's attorney at the time) requesting that they propose an alternate GAL. *Id*. at 5. In response, Ms. Passey stated: "After looking at the list for attorneys, I would propose Brian Parks [*sic*] or Cheryl Duffy as GALs" and Canfield responded: "Brian Parker is fine with me." *Id*. 4-5. Thus, the evidence establishes that someone other than Parker was originally assigned to the divorce proceedings and only when that GAL was unavailable, the Judicial Coordinator requested input from the attorneys. The evidence further establishes that it was *Bloom's* attorney, not Canfield, who proposed that Parker be assigned to the case. While Bloom may not be happy with the ultimate selection of Parker for her divorce case, she cannot plausibly allege that his selection was part of a scheme to deprive her of her constitutional rights. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (stating that if exhibits conflict with allegations in the complaint, the Court need not accept those allegations as true); *Benavidez*, 993 F.3d at 1144 (quoting *United States v. Corinthian Colls*., 655 F.3d 984, 991 (9th Cir. 2011) ("A plausible claim includes 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As such, Bloom has failed to plausibly allege that the County's practice of allowing attorneys to "handpick" the GALs for their cases "was the moving force behind" her alleged constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citations omitted).[5]

---

[5] Bloom also claims that the County's practice of allowing attorneys to "handpick" which GALs will be assigned to a case runs afoul of Snohomish County Superior Court Administrative Order 36-10 ("AO 36-10") that, according to Bloom, "mandate[s] legal and administrative protocols for the neutral selection and appointment of GALs to family law cases." TAC ¶ 4.4. Contrary to Bloom's allegation, AO 36-10 does not "mandate" the "neutral" selection of

ORDER GRANTING MOTION TO DISMISS
- 10

**(b)     The County's purported custom, policy, or practice of ignoring and/or summarily dismissing without procedural safeguards complaints about GALs**

Bloom alleges that Parker filed multiple "unsubstantiated and fraudulent" reports in her divorce proceeding, which caused her to file grievances against him with the Snohomish County GAL Administration Office on August 20, 2021 and January 19, 2023. TAC ¶ 4.9. Bloom claims that her grievances were "summarily denied" behind "closed door[s]" without the ability to appeal. TAC at ¶¶ 5.12, 6.14.[6] She further alleges that the County's "unilateral . . . dismissals . . . reflect a systemic failure in oversight, shielding GALs from any outside overview or accountability" and "underscore[es] deliberate indifference to the ongoing violations of [Bloom's] core constitutional rights. *Id*. at ¶¶ 6.13 and 6.16.[7]

SCLGAR Rule 7.1 of the Local Rules for Superior Court of Snohomish County, Part X ("Rule 7.1") governs GAL grievance procedures in Snohomish County Superior Court. Rule 7.1 sets forth a detailed process for filing a grievance against a GAL, including how to file a grievance, the initial screening process and who conducts the review, what factors are considered in determining whether misconduct occurred, findings, timing, and potential consequences. Rule 7.1(a)-(e), (i). Rule 7.1 also provides that "[a]ll resolutions of grievances or complaints by the

---

GALs. Dkt. No. 55, Ex. 7. In fact, AO 36-10 is silent on the selection process, instead simply providing that if a judge or commissioner determines that a GAL report would "aid the court in making a decision," the court will enter an order appointing a GAL. *Id*. at 1. AO-36-10 does not clarify how the judge/commissioner determines which GAL to list on the appointment order—*e.g*., does the judge/commissioner select one, do the parties propose a GAL, is there a list that the court rotates through—nor does it provide selection criteria or even require that the GAL be a neutral party. Thus, Bloom has also failed to plausibly allege that the County's alleged practice of allowing attorneys to "handpick" GALs for their cases contravenes AO 36-10.

[6]Bloom attaches to the TAC a letter dated January 24, 2023 from Paul Thompson, the Chair of the GAL Committee, in which he states that he "has reviewed [Bloom's] complaint and concluded the complaint is unfounded" because it "does not contain facts or evidence sufficient for the Committee to determine that any violations of the GAL rules have occurred." Dkt. No. 55, Ex. 2.

[7]Notably, Bloom also alleges that she was not provided notice of the County's resolution of her grievances. TAC at ¶ 5.12. Exhibit 2 directly contradicts this allegation.

ORDER GRANTING MOTION TO DISMISS
- 11

GAL Committee shall be final and not subject to further appeal." Rule 7.1(g).[8] It is this lack of appealability that Bloom claims violated her constitutional right to due process. She claims that the fact that the GAL Committee's decision on a grievance is not appealable allows the County to ignore and/or summarily dismiss alleged misconduct, fraud, or bias by GALs, thereby shielding them from accountability and violating litigants' rights to due process.

As evidence that the County uses the non-appealability of the GAL Committee's grievance decisions to ignore and/or summarily dismiss GAL misconduct complaints, Bloom cites (and attaches to the TAC) three pieces of evidence that she claims the GAL Committee Chair, Paul Thompson, disregarded in dismissing her grievances against Parker. First, she claims that Thompson disregarded an August 2020 declaration by Michael Gallagher, an attorney in another divorce proceeding to which Parker was assigned. In his declaration, Gallagher challenges Parker's request for GAL fees and raises concerns about "deficiencies in [Parker's] investigation [and] reporting and recommendations." Dkt. No. 55, Ex. 5 at 1. Specifically, Gallagher alleges that Parker failed to take the "best interest" of the child into consideration and showed bias against the child's mother in favor of the father. *Id*. at 3-4. He further alleges that Parker misled the superior court about his fees. *Id*. at 5.

Next, Bloom points to a GAL application that Parker submitted to Snohomish County Superior Court on September 19, 2022. Dkt. No. 55, Ex. 9. In the application, Parker states that "two clients and one litigant in a GAL case" have complained about him to "the bar association in the past, but in each case it was deemed no professional misconduct was alleged, and no

---

[8] Bloom simultaneously claims that Rule 7.1 requires that there be a judicial assessment if there is an allegation of GAL misconduct, TAC ¶ at 6.16 (Rule 7.1 "require[s]" "judicial review"), while also claiming that Rule 7.1 prohibits judicial review (except in an unrelated circumstance), *Id*. at ¶ 6.10, ¶ 6.13 (grievances are "handled exclusively under administrative protocols, completely detached from judicial procedures, protocols, or oversight").

ORDER GRANTING MOTION TO DISMISS
- 12

investigation or follow up was performed." *Id*. at 4.[9] Lastly, Bloom attaches a report from the Everett Police Department ("EPD"). *Id*. at Ex. 3. On September 7, 2022, Bloom walked into the EPD and filed a statement in which she accused Parker of making false statements when he testified during her divorce trial. *Id*. at 6, 13-18. The EPD report is the result of EPD Officer Shelton's investigation into Bloom's claims. Bloom accused Parker of making six false statements during his May 11, 2022 testimony. *Id*. at 13-18. Officer Shelton reviewed each of the claims, including the supporting documentation Bloom provided, and concluded that five of the allegations did not warrant further investigation. *Id*.

However, Officer Shelton determined that one of Bloom's accusations did warrant further investigation. Bloom told Officer Shelton that she had requested that Parker interview her children at her house instead of at his office, but during his trial testimony, Parker stated that "at no point" did Bloom request that he "interview the children in her home." *Id*. at 16. Bloom provided Officer Shelton with a copy of an email she wrote to Parker on April 27, 2021, in which she stated: "Is there no way to have you come here to the house?" *Id*. at 17. Officer Shelton spoke with Parker on May 16, 2023 and asked if he remembered receiving Bloom's April 27, 2021 email. Parker responded that "he did not remember it and it may have been something he missed in the 'dozens, if not hundreds' of emails he received from [Bloom] but he always tried to be as accurate as possible." *Id*. Officer Shelton determined that Parker's testimony on this issue during the divorce proceedings was false but was unable to conclude whether Parker knew that his statement was false at the time that he made it. *Id*. at 20. Therefore, he referred the matter to the Snohomish County Prosecuting Attorney for "charging consideration." *Id*. at 21.

---

[9] It is clear from the context that the "litigant in a GAL case" is Bloom.

ORDER GRANTING MOTION TO DISMISS
- 13

Bloom alleges that the foregoing demonstrates that the County has a policy, custom, and/or practice of disregarding or summarily dismissing GAL grievances. Once again, the exhibits attached to the TAC undermine her allegations. For instance, Bloom alleges that in dismissing her grievances against Parker, the County ignored the fact that Officer Shelton referred one of her allegations to the prosecuting attorney for charging consideration. However, Bloom attaches a letter from the Snohomish County Superior Court dated December 6, 2023 in which it notifies Parker that his prior suspension "from taking pro tem commissioner calendar assignments pending investigation" of the EPD report against him has been lifted. Dkt. No. 55, Ex. 13 at 23. Thus, this establishes that contrary to ignoring the possible charge, the County suspended Parker from at least some court activities pending investigation of the charge. In addition, Plaintiff attaches an email from the Everett City Prosecutor's Office dated December 4, 2023 which states that the Office has reviewed the matter and is "declining to file charges." *Id*. at 27.[10] Parker forwarded this email to the County the next day. *Id*. at 26. Therefore, when Thompson determined on January 24, 2023 that Bloom's grievance against Parker was unfounded, he was aware that the Prosecutor's Office had declined to file charges against Parker. *See* Dkt. No. 55, Ex. 2.

Nor does Parker's GAL application suggest that the County has a policy, custom, or practice of ignoring or summarily dismissing complaints against GALs. The application does not establish a pattern or practice as the only GAL-related complaint referenced in the application is Bloom's complaint that Thompson had already determined was unfounded. The other two

---

[10] It is unclear from the record why the Everett City Prosecutor's Office made the charging decision as opposed to the Snohomish County Prosecuting Attorney to which Officer Shelton originally referred the matter.

ORDER GRANTING MOTION TO DISMISS
- 14

1  complaints were not related to Parker's GAL practice and, further, he reported that the bar
2  association investigated the claims and determined that no professional misconduct was alleged.
3        The Court finds the Gallagher declaration more troubling but nevertheless concludes that
4  it does not establish that the County ignored evidence of bad acts by Parker and/or summarily
5  dismissed Bloom's grievances against him. There is no evidence that Thompson was aware of
6  the Gallagher declaration at the time he reviewed Bloom's grievances; thus, Bloom has failed to
7  allege that the County ignored the declaration at the time Thompson rendered his decision.
8        The Court concludes that Bloom has failed to plausibly allege that the County ignored
9  evidence of malfeasance by Parker and/or summarily dismissed her grievances against him.
10  Therefore, Bloom has likewise failed to sufficiently allege that the fact that decisions regarding
11  GAL grievances under Rule 7.1 are final and non-appealable violated her constitutional rights.
12  *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of*
13  *Los Angeles*, 533 F.3d 1010,1022, 1026 (9th Cir. 2008)) (In order to prove a claim for municipal
14  liability based on a policy, custom, or practice, a plaintiff must demonstrate that an "'official
15  policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the claimed
16  injury.'").

17        **(c)    The County's purported custom, policy, and/or practice of
18                 withholding, delaying, or obstructing public records requests
               related to GALs**

19        Bloom alleges that the County maintains a practice of "unreasonably delaying, and
20  denying, destroying or concealing records that would expose the unconstitutional customs,
21  policies and practices of County GAL administration." TAC ¶ 5.17 She claims that the "delays
22  and incomplete production of records are designed to and do directly prejudice [her] ability to
23  plead her claims, file motions based on [Parker's] misconduct, and present supporting evidence

ORDER GRANTING MOTION TO DISMISS
- 15

in both state and federal court filings." *Id*. at ¶ 5.22. As evidence of the County's allege practice, Bloom asserts that she submitted a records request to the County pursuant to Washington State Courts General Rule 31.1 ("General Rule 31.1") on in December 2024 and it took the County over six months to provide her with a complete response to the request. Dkt. No. 55, Ex. 10. In addition, the County declined to provide copies of twelve documents responsive to her request, alleging that they "are exempt from disclosure." *Id*. at Ex. 11 at 1. The County provided a "Withholding Log" as to those documents that states the number of pages in each withheld document, a description of the document, its date, author, and recipient, and the rule pursuant to which it was withheld. *Id*. at 3-5. Each of the documents was withheld pursuant to Superior Court Local Court Rule 7.1(f) as related to a "complaint against a GAL that was determined to be unfound." *Id*.[11] The information provided in the Withholding Log is sufficient to make clear that the withheld documents pertain to Bloom's two grievances filed against Parker, and seven of the twelve withheld documents were authored by Bloom. *Id*.

General Rule 31.1 provides the procedure for accessing state administrative records. It provides that the agency that receives a written request for access to an administrative record must respond to the request within five working days of its receipt and "include a good-faith estimate of the time needed to respond to the request." *Id* at 31.1(c)(3). The Rule further provides that the "estimate may be later revised, if necessary." *Id*. The Rule also provides that the requester may request an internal review of the agency's final response to the written request for records and such review shall happen with five days of the request for an informal review. *Id*. at (d)(3). After the informal review is complete, the requester may seek an external review and such

---

[11] Local Court Rule for Superior Court of Snohomish County, Part X, 7.1(f) provides: "**Confidentiality**. The complaint, investigation, and any initial report shall be confidential until a finding of potential merit" (bold in original).

ORDER GRANTING MOTION TO DISMISS
- 16

request must be made within 30 days of the issuance of the agency's completion of the informal review. *Id*. at (d)(4)(iii).

It appears from the exhibits attached to the TAC that the County provided a partial response to Bloom's request on January 31, 2025 and informed Bloom on multiple occasions thereafter that more time was needed to provide a complete response to her request. Dkt. No 55, Ex. 14. On May 12, 2025, Bloom submitted a request for an informal review of the County's response to her written request for documents, but she does not indicate the result of that review or whether she requested a formal review thereafter. *Id*. at Ex. 10; Ex. 14 at 2-3. On June 4, 2025, the County provided Bloom with the remainder of the documents responsive to her administrative records request. Dkt. No. 56, Ex. 6.[12]

The Court concludes that Bloom has failed to plausibly allege that the County has a policy of delaying, withholding, or destroying administrative records for the purpose of concealing unconstitutional actions by County GALs. First, the evidence demonstrates that the County timely responded to Bloom's request and provided her with an estimated timeframe for the production. The evidence further makes clear that the County at least partially responded to the request with 41 days, which included multiple holidays during which the County was closed. While it did take the Court almost another six months to complete its production, the County repeatedly updated Bloom on its progress throughout that time. All of this is in compliance with General Rule 31.1. Second, Bloom has presented no evidence that the County destroyed any documents related to her administrative records request. Blanket, conclusionary statements

---

[12] Plaintiff attached the documents to her attempt to amend her complaint for a fourth time. *See* Dkt. No. 56. The Court struck the amended complaint from the record for multiple reasons, including that it was not properly filed and that it was untimely. Dkt. No. 70. However, out of an abundance of caution, the Court has reviewed the documents included in the exhibits filed with Plaintiff's attempted fourth amended complaint and concludes that they do not impact the outcome of the instant motion.

ORDER GRANTING MOTION TO DISMISS
- 17

claiming the same are not sufficient to survive a motion to dismiss. *See Segura*, 647 F. Supp. 3d at 933 (citing *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)) (a plaintiff must do more than allege in a conclusory fashion that the County maintains an unwritten policy or custom of permitting the types of wrongs plaintiff experienced, "[i]n the motion to dismiss context, the Ninth Circuit has made clear claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*."). Lastly, Bloom cannot plausibly allege that the County's withholding of the twelve documents (as listed on the Withholding Log) somehow prejudiced her. As stated earlier, seven of the twelve withheld documents were authored by Bloom, so she is aware of their contents. Dkt. No. 55, Ex. 11 at 3-5. Two of the documents were the letters Thompson sent Bloom in response to her grievances so, again, she is aware of their contents. *Id*. Of the three remaining documents, two are excel spreadsheets summarizing Bloom's grievances and the last document is described as: "Email message sent from Mitch Peterson, Programs Manager for Snohomish County Superior Court Administration, to Judge Paul Thompson, chair of the GAL Committee, summarizing Olimpia G. York's 1/19/23 complaint against GAL Brian Parker. The message includes 6 scanned .pdf attachments: the original complaint and the 5 exhibits [authored by Bloom]." *Id*. at 5. Once again, Bloom has access to the information contained in these documents.[13]

---

[13] The Court notes that Local Court Rule for Superior Court of Snohomish County, Part X, 7.1(f)'s prohibition of the release of records related to GAL grievances "until a finding of potential merit" appears to contradict General Rule 31.1(l)(12)(iii) which provides: "A grievance shall be open to public access, along with any response to the grievance submitted by the professional guardian or agency, once the investigation into the grievance has been completed or once a decision has been made that no investigation will be conducted. The name of the professional guardian or agency shall not be redacted from the grievance." Nevertheless, the Court concludes that for the reasons stated above, the County's withholding of the documents did not injure Bloom.

ORDER GRANTING MOTION TO DISMISS
- 18

        **(d)**        **The County's purported custom, policy, and/or practice of non-training and non-oversight to ensure GAL compliance with the law**

Bloom claims that the County has a policy, custom, or practice of failing to train and supervise GALs and that as a result of this lack of training and supervision, Parker "worked expressly and unreasonably against her, violating her due process and equal protection rights." TAC ¶ 6.29. She alleges that the County "knowingly allowed [Parker] to misrepresent facts, withhold information, and engaged in administrative shielding that blocked evidence from being introduced into court proceedings." *Id*. She further alleges that the County's failure to train and supervise its GALs allowed Parker to "collu[de] with Canfield[.]" *Id*. at ¶ 6.29.

The Court has already determined that Bloom cannot plausibly allege that the County "shielded" Parker or "colluded" with Canfield in light of the emails and other documents Bloom attaches to the TAC and will not address those claims again here. Further, Bloom's conclusionary allegations that "the County maintains a custom or practice of carte blanche accepting GAL reports, testimony and evidence" and facilitates "judicial favoritism and manipulation" are wholly unsubstantiated. *Id*. ¶ 6.33. The "factual allegations" Bloom alleges in support of these conclusionary statements are either demonstrably false—*see*, *e.g.*, ¶ 6.38 alleging that Parker served as a pro tem judge while he was "under [Everette Police Department] investigation"—or do not provide support for the conclusions—*see*, *e.g.*, ¶ 6.41 alleging that Parker served as a GAL in three other cases Cranfield handled; ¶¶ 6.45-6.46 alleging that the County provided Parker with a copy of an email from the Everett Herald "at no cost" and without requiring him to submit a records request. None of these allegations supports a reasonable inference that the County accepts "carte blanche" GAL reports or facilitates "judicial

ORDER GRANTING MOTION TO DISMISS
- 19

favoritism and manipulation." *See Starr*, 652 F.3d at 1216 (a *Monell* claim must contain sufficient allegations to "plausibly suggest an entitlement to relief").

## V.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS the County's motion to dismiss because Plaintiff has failed to plausibly allege the required elements necessary to establish liability under *Monell*. Given that this is Plaintiff's third attempt to state a claim against the County and because it is clear that Plaintiff cannot cure the deficiencies in the complaint with another amendment, the dismissal is with prejudice. Bloom also moves to strike the County's reply in support of the motion to dismiss or, in the alternative, to file a sur-reply. Dkt. No. 68. The gist of Bloom's objection appears to be that the County referenced the fact that Bloom has also filed a lawsuit in Thurston County Superior Court, a fact that the Court did not consider in resolving the motion to dismiss. Therefore, the Court HEREBY DENIES the motion to strike. This matter is HEREBY DISMISSED with prejudice.

Dated this 3rd day of September 2025.

Barbara Jacobs Rothstein
U.S. District Court Judge